Receipt number AUSFCC-9633860

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |
|---|---|
| AMENTUM SERVICES, INC., ) | |
| ) | |
| *Plaintiff,* ) | Case No. ___24-916 C___ |
| ) | |
| v. ) | Judge _____ |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

**COMPLAINT**

Plaintiff, Amentum Services, Inc. (Amentum), for its Complaint against Defendant, the United States of America, acting by and through the United States Department of the Air Force (Air Force), states as follows:

**INTRODUCTION AND NATURE OF THE ACTION**

Amentum has successfully provided Contractor Field Team (CFT) services to the Air Force for over six decades.  Under the current CFT program multiple award task order contract, awarded on November 23, 2016 (the CFT contract), Amentum provides CFT services to Naval Air Station Oceana (Oceana) in Virginia Beach, Virginia through a fixed-price task order awarded by the Air Force that began performance on December 1, 2022 (the Oceana task order). The primary purpose of the CFT contract is for Amentum to provide weapon system maintenance, under which Amentum continues to successfully perform an aviation maintenance task order at Oceana with an appropriate mix of manning based upon the actual requirements at that site.

However, the CFT contract and the Oceana task order also contain a Minimum Team Complement clause (MTC), which identifies a minimum number of full-time equivalent positions and skills for each awarded task order.  Where the MTC is not met, the CFT contract

provides the Air Force with two options for seeking relief, to the extent necessary. First, the CFT contract contains a liquidated damages clause. That clause establishes a daily rate in the event Amentum does not provide the contracted for services within the time required by the contract. During the solicitation process for the CFT contract, the Air Force was clear that this clause applied when a contractor did not meet the MTC staffing requirements. Second, the Air Force could request alternative forms of consideration from the contractor, in lieu of damages, "that considers the hourly rate of the skill set as well as the length of time the MTC is not being met." For example, in the predecessor contract, the Air Force reallocated staffing to other sites at no additional cost when minimum staffing levels were not achieved and found to be in excess of the actual site requirements.

After Amentum began performance on the Oceana task order, despite the fact that the customer did not raise any issues about the quality of Amentum's performance and that all of Amentum's monthly reports demonstrated the company was exceeding the performance standards, the Contracting Officer raised concerns that Amentum was not meeting the MTC requirement. Subsequently, the Air Force issued a letter to Amentum seeking damages for Amentum's alleged failure to meet the MTC requirement. But, the Air Force did not request liquidated damages based on the preset daily rate or seek alternative consideration in lieu of direct monetary damages. Instead, the Air Force—for the first time in the more than six-year history of the CFT contract—presented Amentum with a new legal theory of recovery. Under the Air Force's new theory, the MTC clause permitted the agency to assess damages for each day the MTC was not met, at a rate based upon the unstaffed positions and the daily rate for each position. The Air Force's argument, in effect, asserted that it was entitled for repayment on a labor-hour basis as if it had awarded Amentum a time and materials contract, rather than a fixed-

2

priced performance contract. In addition, the Air Force, again for the first time, took the position that the liquidated damages clause did not apply to the MTC requirement and that that contracting officer had the unfettered discretion to assess damages "by any means that are determined to be in the best interest of the Government." Ultimately, the Air Force notified Amentum that its position was final and issued two unilateral modifications to the contract assessing damages for February 2023 through May 2023 in the amount of $875,873.36 – almost twice the maximum damages available under the liquidated damages clause.

But the Air Force's claim for damages under the MTC clause is not permitted by the contract. Consistent with (1) the plain language of the contract, (2) the contract negotiation history, and the (3) six years of performance history, the CFT contract limits monetary damages for any failure to provide services to the amounts set forth in the liquidated damages clause. While the MTC clause permits the contracting officer to seek alternative forms of consideration in lieu of monetary damages, nothing in that clause allows the Air Force to end run around the damages it established as being "roughly equal to the amount of damages likely to fall upon the Government for Contractor failure to deliver requested services," to include those services required by the MTC clause.

Because the Air Force's claim is barred by the liquidated damages clause and otherwise fails to establish a legal basis for the relief it seeks, Amentum respectfully requests that the Court intervene and, for the reasons set forth below, resolve this contract dispute by granting Amentum declaratory relief.

**PARTIES**

1.      Amentum is a corporation with its principle place of business in Chantilly, Virginia.  Amentum is currently providing services to the Navy under Task Order FA8108-23-F-0001 to Contract No. FA8108-17-D-0016.

2.      Defendant, the Air Force contracted for Amentum's services through its Air Force Sustainment Center (AFSC), located at 7701 Arnold Blvd, STE 207, Tinker AFB, OK 73145.

**JURISDICTION AND STANDING**

3.      Pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) this Court "shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  Furthermore, 28 U.S.C. § 1491(a)(2) provides that this Court has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under" the Contract Disputes Act, 41 U.S.C. § 7104(b)(1).

4.      This Court's Tucker Act jurisdiction provides the authority "to grant nonmonetary relief in connection with contractor claims, including claims requesting an interpretation of contract terms."  *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1270 (Fed. Cir. 1999).

5.      This Court may also grant declaratory relief during contract performance if the claim presents "a fundamental question of contract interpretation or a special need for early resolution of a legal issue." *CB & I AREVA MOX Services, LLC v. United States*, 138 Fed. Cl. 292, 298 (2018) (citing *Alliant Techsystems*, 178 F.3d at 1271).

4

6.      Under the Contract Disputes Act, 41 U.S. Code § 7101, *et seq.*, the Federal Government may file a claim, in writing, "against a contractor relating to a contract" which "shall be the subject of a written decision by the contracting officer."  41 U.S.C. § 7103(a)(3).

7.      Although not defined by statute, a claim is defined under the Federal Acquisition Regulation (FAR) to "mean[] a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to [the] contract."  FAR 52.233-1(c) (2014).

8.      Upon receipt of a claim, the contracting officer is required to issue a final decision within the time prescribed in 41 U.S.C. § 7103(f).

9.      For claims of $100,000 or less, the contracting officer is required to issue a decision within 60 days of receipt of the claim when requested to do so in writing by the contractor.  41 U.S.C. § 7103(f)(1).

10.      For claims over $100,000, the contracting officer may, within 60 days of receipt of the claim either (i) issue a decision or (ii) identify when a decision will be issued.  41 U.S.C. § 7103(f)(2)

11.      Within 12 months from either the date of receipt of a contracting officer's final decision or the date the deadline for issuing such a decision passes, a contractor may bring an action challenging the final decision in this Court.  41 U.S.C. § 7104(b)(1).

12.      On June 13, 2023, Niem Luu, the Contracting Officer for the Oceana task order, emailed Amentum under the subject "Government's final position on consideration FA8108-23-F-0001."  The email attached a letter from the Contracting Office stating that "[a]fter careful

review of Amentum's letter, the Government respectfully denies Amentum's offer of payment and reserves its right under the basic contract clause H-1 (6)(b)."[1]

13.     On June 26, 2023, the Air Force issued a unilateral modification to the Oceana Task Order, reducing the contract price by $777,657.04 as purported consideration for Amentum's alleged failure to meet the requirements of the MTC clause during the months of February through April 2023.

14.     On July 18, 2023, the Air Force issued unilateral modification P00009 reducing the contract price by an additional $98,216.32 as purported consideration for Amentum's alleged failure to meet the MTC clause during the month of May 2023.

15.     Neither the unilateral modifications nor the June 13, 2023 letter were clearly identified as a final decision and did not provide Amentum with the required notice of appeal rights mandated by the Contract Disputes Act.

16.     On November 15, 2023, more than 90 days after the unilateral modifications were issued, Amentum waived the formal requirements for a final decision lacking from the modifications and appealed the Air Force's decision directly to the Armed Services Board of Contract Appeals (the Board).  A decision by the Board is pending over whether the Board has jurisdiction over the appeal.

17.     In the event the Board finds that Amentum was required to appeal the unilateral modifications within 90 days after their issuance and that the Board does not have jurisdiction over Amentum's appeal, the Court has jurisdiction over this dispute where Amentum has filed this complaint within twelve months from the date of those modifications as required by 41 U.S.C. § 7104(b)(1).

---

[1]     The June 13, 2023 letter is attached hereto as Exhibit 1.

## BACKGROUND FACTS

### The Contract

18.    The Air Force awarded Amentum, then known as URS Federal Services, Inc., Contract No. FA8108-17-D-0016 (the CFT contract). The CFT program is a multiple award acquisition wherein contractors "support[] multiple customers to provide timely and high quality augmentation for fielded active weapon system maintenance worldwide."

19.    The contract field teams perform modification, maintenance, inspection and repair of active systems in the US Government inventory, such as aircraft; vehicles; aerospace equipment; missile systems; subsystems such as engines, communications, and cryptologic equipment; and ground support equipment both in the continental United States, and outside the continental United States.

20.    Amentum's CFT contract is Indefinite Quantity contract, with a maximum value of $11,400,000,000.00.

21.    The contract provided that any firm-fixed price task orders awarded under the contract "will utilize a Minimum Team Complement (MTC) . . . ."

22.    The MTC "is defined as 'the required minimum amount of staffing necessary for effective performance on each task order.' The Government will solely determine the minimum team complement based on agency needs for a particular location."

23.    The contract stated that:

All Contractors are required to meet the MTC as requested on each individual task order. If a Contractor is not meeting the MTC (excluding Holiday Leave, Annual Leave, Sick Leave, FMLA Leave, Temporary Military Duty and standard backfill) then the PCO may request consideration that considers the hourly rate of the skill set as well as the length of time the MTC is not being met. The PCO will seek consideration by any means that are determined to be in the best interest of the Government for the Contractor's inability to successfully meet the MTC as set

7

forth in the Basic contract PWS/task order PWS unless it was determined to be at the fault of the Government.

24.    The CFT contract also included clause FAR 52.211-11 Liquidated Damages—Supplies, Services or Research and Development.

25.    During the CFT solicitation, offerors submitted questions concerning the MTC and liquidated damages portions of the contract and the relationship between the two sections.

26.    Question 69 asked: "Reference Draft RFP Section I Clause 52.211-11 LIQUIDATED DAMAGES--SUPPLIES, SERVICES OR RESEARCH AND DEVELOPMENT (SEP 2000). Will the referenced clause only apply to true FFP CLINs (i.e. X001)?"

27.    In response the Air Force stated:

"[t]he Government does not understand your reference to "true FFP" CLINs. This Clause may apply to any CLIN where the Government requires performance. Clause 52.211-11 states this CLIN may apply when the "Contractor fails to deliver the services within the time specified in this contract . . . ." The CFT liquidated damage clause is in no way punitive in nature. **This clause simply establishes the amount of liquidated damages will be roughly equal to the amount of damages likely to fall upon the Government for Contractor failure to deliver requested services**."

(emphasis added).

28.    Question 115 asked: "Please explain how FAR 52.211-11 will be used when the schedule is undefined especially since this clause is only supposed to be used when the time of delivery or timely performance is so important that the Government may reasonably expect to suffer damage if the delivery or performance is delinquent."

29.    In response, the Air Force stated:

The Government may utilize the liquidated damages clause in the event the "Contractor fails to deliver the services within the time specified in this contract . . .." Your statement, "since this clause is only supposed to be used when the time of delivery or timely performance is so important that the Government may reasonably expect to suffer damage if the delivery or performance is delinquent" seems to imply that the Government does not suffer damage for delinquent

**8**

performance for CFT Type work. This is incorrect. Work associated with CFT efforts is often for no-fail missions where effective Contractor performance is imperative.

30.    Question 128 asked: "Reference Draft RFP Section I Liquidated Damages Supplies and Services Clause 52.211-11. Why is this included?  What is the range of LDs?  How will this be applied? Can this clause be removed from the basic IDIQ and applied at the task order level?"

31.    In response the Air Force stated:

Clause 52.211-11 is included for this acquisition to protect the Government in the event the "Contractor fails to deliver the services within the time specified in this contract . . . ." As noted in the draft RFP, the amount of liquidated damages will be cited on each individual task order.

Potential offerors will be notified of the liquidated damages amount during the fair opportunity process. The range or amount of liquidated damages will be based on the size of the task order.  Historically task orders have ranged in FTE sizes from 2 FTEs to 1427 FTEs. This clause will not be removed from the basic IDIQ because it will be applied at the task order level. The Government believes it is important to let offerors know up-front that a liquidated damages clause will be applied at the task order level.

32.    Question 129 asked: "Is the potential for incurring a liquidated damages penalty only applicable on those Task Orders that the Government provides a Minimum Team Concept (MTC)?  If contractor bids more FTEs that the Government dictated MTC, does Contractor only incur potential liquidated damages if they do not meet the MTC requirement?"

33.    In response, the Air Force stated:

The Government may utilize the liquidated damages clause in the event the "Contractor fails to deliver the services within the time specified in this contract . . . ." This may or may not be applicable to the Contractors inability to meet the MTC. **Failure to meet the MTC is one way a contractor fails to deliver services**, but it is not the only way.  This liquidated damage clause is not punitive in nature. **This clause simply establishes the amount of liquidated damages will be roughly equal to the amount of damages likely to fall upon the Government for Contractor failure to deliver requested services**.

9

(emphasis added).

34.    Question 131 asked "In lieu of imposing liquidated damages on the FFP Task Orders, would the Government consider treating the FFP as Level of Effort and including a fee reduction penalty clause? This way the Offeror will know what penalty will be incurred if they do not meet the MTC."

35.    In response, the Air Force stated: "No, this is not an FFP Level of Effort contract."

36.    In Question 95, an offeror raised concerns of being penalized for having vacant positions even where its performance of the CFT work central to the contract was ahead of schedule, noting that "[s]ince this is a performance based contract, a vacancy should also not count against the contractor if they are ahead of schedule. Performance Based metrics should carry a higher value than simply filling a vacancy."

37.    In response, the Air Force noted that meeting the MTC was a "condition of the contract and has been determined by the government to be a measurable element of performance," but that the agency "agrees that [other] performance based metrics should have a higher value than simply filling a vacancy [and t]hat is why the basic contract metrics will be a third category of assessment at the basic contract level, along with performance and schedule."

### The Oceana Task Order

38.    On November 17, 2022, the Air Force awarded Amentum Task Order No. FA8108-23-F-0001 under the CFT contract for aircraft maintenance services at Naval Air Station (NAS) Oceana in Virginia Beach, Virginia (the Oceana Task Order).

39.    The Oceana Task Order includes a liquidated damages clause, FAR 52.211-11 Liquidated Damages – Supplies, Services Or Research And Development.

40.    The liquidated damages clause specifies that "[i]f the Contractor fails to deliver the supplies or perform the services within the time specified in this contract, the Contractor shall, in place of actual damages, pay to the Government liquidated damages of $ 3,804.00 per calendar day of delay."

41.    The Performance Work Statement (PWS) includes a requirement for Amentum to provide a "Firm-Fixed-Price Minimum Team Complement" at NAS Oceana as incorporated into Amentum's pricing proposal.

42.    The PWS provides that Amentum's compliance with the MTC requirement "will be measured against the TOTAL number of skills reported on the Contractor monthly performance evaluation, CFT Form 104, for that task order, not against any particular Full Time Equivalent (FTE) discrepancy."  Where a skill that is reported vacant is filled during the reporting period, "it will not be counted against the Contractor unless if affects the billable FFP MTC total required per the task order PWS."

43.    The Oceana Task Order transition period was from December 1, 2022 through January 31, 2023.

44.    Amentum began full performance of the task order began on February 1, 2023.

**The Air Force's Claim For Consideration Under The MTC Clause**

45.    On April 13, 2023, the Air Force issued a letter to Amentum demanding consideration in the amount of $708,155.84.

46.    The Air Force stated that the order required an MTC of 352 personnel and alleged that Amentum's actual manning for February and March was only 290 and 298 personnel, respectively.

47.     The Air Force further asserted that, as a result of the alleged shortage, the agency was entitled to consideration for each FTE position calculated on the basis of the daily rate for that position for each day the position was not filled.

48.     In its May 3, 2023 response to the Air Force, Amentum demonstrated that it was successfully meeting or exceeding three of the four performance metrics and exceeded the schedule metric.

49.     To the extent Amentum's manning was below the MTC amount, the Air Force did not have the actual number of aircraft at the site to support the elevated workforce levels in the MTC and did not even provide sufficient equipment and tools to support a workforce of 352 personnel.

50.     In addition, the Air Force contracting officer representatives evaluating Amentum's performance concluded that Amentum had sufficient manning "in number and skills" to meet the requirements of the contract.

51.     Given the lack of actual damages, and Amentum's otherwise substantial performance of the contract requirements, Amentum advised the Air Force that there was no basis for assessing damages.

52.     But, even if the Air Force were entitled to assess damages, Amentum advised the Air Force that its ability to assess damages was limited by the liquidated damages clause.  Under the liquidated damages clause the maximum liquidated damages permissible for the two-month period is $224,436.

53.     Based upon a weighted calculation, considering the fact that the MTC requirement was one of four performance metrics, Amentum offered reduced consideration in compromise.

**The Air Force's Final Decision And Claim For Consideration**

54.     On June 13, 2023, Niem Luu, the Contracting Officer for the Oceana Task Order, emailed Amentum under the subject "Government's final position on consideration FA8108-23-F-0001."

55.     Despite failing to meet the requisite formalities set forth in FAR 33.211, the Air Force represents that the June 13, 2023 letter is the contracting officer's final decision pursuant to 41 U.S.C. § 7104(a)(3).

56.     The email included June 13, 2023 letter from the Air Force that provided, "the Government's response to Amentum's letter dated 3 May 2023 requesting the Government rescind their request for consideration and accept $7,372.15 as voluntarily payment. After careful review of Amentum's letter, the Government respectfully denies Amentum's offer of payment and reserves its right under the basic contract clause H-1 (6)(b)."

57.     The letter stated that "[t]he Government is not disputing Amentum's performance of meeting the metrics stated on page 2 and 3 of [Amentum's letter] for workload assigned by the Government Maintenance Control Office (MCO)."

58.     However, the Air Force asserted that "[i]n accordance with basic contract Performance Work Statement (PWS) paragraph 4.4 . . . the Government has sole determination of the FFP MTC."

59.     In addition, the Air Force asserted that:

Basic contract clause H-1 (6)(b) is the established remedy when the contractor is not meeting the Minimum Team Complement (MTC) as stated in the Performance Work Statement (PWS). This clause does not require the Government to prove damage. In addition, the H-1 special clause supersedes [sic] the liquidated damage clause which Amentum used to calculate its payment offered to the Government.

13

60.     The letter stated that "[t]he Government intends to issue unilateral modifications reducing Firm Fixed Price (FFP) payments by the revised consideration amount. This is dertemined [sic] to be the Government's best interest in enforcing MTC requirement."

61.     In the email accompanying the letter, the Contracting Officer stated that "[a] modification reducing June FFP payment by the consideration amount will be sent by the end of this week."

62.     On June 26, 2023, the Air Force issued unilateral modification P00005 reducing the contract price by $777,657.04. The stated purpose of the modification was "for a unilateral price reduction determination as consideration for failure to achieve the Task Order Minimum Team Complement (MTC) requirement from 1 February 2023 to 30 April 2023 in accordance with basic contract clause H-1(6)(b)."[2]

63.     On July 18, 2023, the Air Force issued unilateral modification P00009 reducing the contract price by $98,216.32. The stated purpose of the modification was "for a unilateral price reduction determination as consideration for failure to achieve the Task Order Minimum Team Complement (MTC) requirement from 1 May 2023 to 31 May 2023 in accordance with basic contract clause H1(6)(b)."[3]

## <u>COUNT I</u>

**DECLARATORY RELIEF – THE AIR FORCE'S CLAIM FOR CONSIDERATION IS BARRED BY THE LIQUIDATED DAMAGES CLAUSE**

64.     Paragraphs 1-63 are incorporated by reference.

65.     Both the CFT Contract and the Oceana Task Order include the clause FAR 52.211-11 Liquidated Damages – Supplies, Services Or Research And Development.

---

[2]     The June 26, 2023 unilateral modification is attached hereto as Exhibit 2.
[3]     The July 18, 2023 unilateral modification is attached hereto as Exhibit 3.

66.     The express language of that clause limits the Air Force's ability to recover damages for any purported failure of Amentum to provide the services required by the contract to a maximum fixed amount of $3,804.00 per calendar day of delay.

67.     When a contract includes a liquidated damages clause, absent a specific carve out, liquidated damages are the exclusive remedy when the government seeks damages. *See Int'l Elecs. Corp. v. United States*, 646 F.2d 496, 508 (Cl. Ct. 1981); *see also K-Con Bldg. Systems, Inc. v. United States*, 97 Fed. Cl. 41, 49 (2011).

68.     The MTC clause does not establish a remedy the Air Force is entitled to receive in excess of the liquidated damages set forth in the contract. Instead, that clause gives the contracting officer the discretion to "request consideration" in the event Amentum "is not meeting the MTC," when doing so is "in the best interest of the Government."

69.     The MTC clause does not entitle the Air Force to recover damages in the amount of the hourly rate for a specific position multiplied by the amount of the time the position remains vacant. Instead the clause provides that the requested consideration may "consider[] the hourly rate of the skill set as well as the length of time the MTC is not being met," and that the Air Force can seek alternate forms of consideration in lieu of requesting damages under the liquidated damages clause. *See id.* at 80.

70.     As described in paragraphs 26-37, the negotiation history for the CFT Contract confirms that the Air Force intended the liquidated damages clause to be applicable to the MTC requirements, that "[f]ailure to meet the MTC is one way a contractor fails to deliver services," and that liquidated damages clause "establishes the amount of liquidated damages will be roughly equal to the amount of damages likely to fall upon the Government for Contractor failure to deliver requested services.

**15**

71.    Amentum is entitled to an interpretation of the Task Order that is consistent with its terms and with what the parties agreed to through the proposal and negotiation process.

72.    Since the Air Force's claim for consideration is barred by the liquidated damages clause, declaratory relief is appropriate because such relief will resolve the dispute and legal remedies would not adequately protect the parties' interests.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Amentum Services, Inc. hereby respectfully requests that this Court grant the following relief:

(a)    a declaratory judgment finding that (1) the Air Force may not seek damages under the MTC clause and (2) may only seek damages for the alleged breach of the MTC clause pursuant to the liquidated damages clause which permits the Air Force to recover damages for any purported failure of Amentum to provide the services required by the contract to a maximum fixed amount of $3,804.00 per calendar day of delay;

(b)    a declaratory judgment finding the Air Force's issuance of modifications P00008 and P00009 were improper and inconsistent with the terms of the CFT Contract and the Oceana Task Order;

(c)    a remand to the Air Force with direction to modify the Oceana Task Order consistent with the valid interpretation of the contract; and

(d)    grant Amentum such other and further relief as the Court may deem just and proper.

Dated:  June 13, 2024                      Respectfully submitted,

/s/ Kevin P. Connelly
Kevin P. Connelly, Attorney of Record
Vedder Price P.C.
1401 New York Ave, NW, Suite 500

16

Washington, DC 20005
(202) 312-3338 (phone)
(202) 312-3322 (fax)
kconnelly@vedderprice.com

Jeffrey M. Lowry
Vedder Price P.C.
1401 New York Ave, NW, Suite 500
Washington, DC 20005
(202) 312-3034 (phone)
(202) 312-3322 (fax)
jlowry@vedderprice.com

Michael P. Ols
Vedder Price P.C.
1401 New York Ave, NW, Suite 500
Washington, DC 20005
(202) 312-3018 (phone)
(202) 312-3322 (fax)
mols@vedderprice.com

*Counsel for Plaintiff, Amentum Services, Inc.*